DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a Marietta Municipal Court judgment that overruled a motion to suppress evidence filed by Ryan C. McDonald, defendant below and appellant herein. Appellant raises the following assignments of error for review:
i. First assignment of error:
ii. "The trial court erred by overruling the motion to suppress in that the officer who administered the breath test to the defendant-appellant did not have a valid permit to operate the bac datamaster."
iii. Second assignment of error:
iv. "The trial court erred by overruling the motion to suppress (dismiss) in that the arresting officer did not have probable cause to initiate a traffic stop."
 {¶ 2} On March 12, 2002, Ohio State Highway Patrol Trooper J.J. Smith stopped appellant's vehicle on State Route 7. Trooper Smith testified that he observed appellant fail to operate his vehicle within the marked lane (crossed the white edge line or fog line) on an entrance ramp to State Route 7. Only one lane of traffic exists on this particular portion of the road. We note that Trooper Smith followed appellant for some distance after the vehicle entered State Route 7, but he did not observe any additional traffic violations.
 {¶ 3} During the course of the traffic stop, Trooper Smith arrested appellant for driving under the influence of alcohol. At the Washington County Sheriff's Department, appellant's breath alcohol test exceeded the statutory limit (.110).
 {¶ 4} Appellant filed two motions to suppress evidence. Subsequently, the trial court overruled both motions and appellant entered a no contest plea to a R.C. 4511.19(A)(3) violation. The trial court accepted appellant's plea and found him guilty as charged. This appeal followed.
 1. I. {¶ 5} In his first assignment of error, appellant asserts that the trial court erred by overruling his motion to suppress the breath alcohol test results. In particular, appellant contends that both the officer who administered appellant's breath alcohol test and the officer who performed the breath testing device's required calibration test did not possess valid permits to perform those tests. Appellant notes that the one-year expiration period in Ohio Adm. Code 3701-53-09(C) applies, and that the officers' previously issued two-year permits expired prior to appellant's breath test.
 {¶ 6} Appellee, however, contends that the Ohio Administrative Code's recently amended regulation must be applied prospectively, not retroactively, and cannot be used to invalidate the officers' permits.
 {¶ 7} Recently, we considered the identical issue in a Marietta Municipal Court case. In State v. Brunson, Washington App. No. 04CA4 we wrote:
i. "Ohio Adm. Code 3701-53-09 governs the issuance and renewal of permits for laboratory directors, laboratory technicians, senior operators, and operators. Prior to September 30, 2002, Ohio Adm. Code 3701-53-09 provided that permits issued under the rule expired two years from the date of issuance.
In September 2002, however, the Department of Health amended Ohio Adm. Code 3701-53-09.
Ohio Adm. Code 3701-53-09(C) now provides: `Permits issued under paragraphs (A) and (B) of this rule shall expire one year from the date issued, unless revoked prior to the expiration date.'
ii. Trooper Robinson received his permit on March 17, 2002, before the amended version of Ohio Adm. Code 3701-53-09 took effect. The permit expressly states that it expires two years from the date of issuance. Brunson, however, argues that the amended version of Ohio Adm. Code 3701-53-09 applies to Trooper Robinson's permit. He argues that Trooper Robinson's permit expired on March 17, 2003, three weeks before Trooper Robinson administered his breath alcohol test. Thus, we must determine whether the one-year expiration period contained in the amended version of Ohio Adm. Code 3701-53-09 applies to permits issued under the prior version of the rule. We conclude it does not.
iii. R.C. 1.48 provides: `A statute is presumed to be prospective in operation unless expressly made retrospective.' InYoungstown Sheet Tube Co. v. Lindley (1988),38 Ohio St.3d 232, 234, 527 N.E.2d 828, the Supreme Court of Ohio recognized that an administrative rule, promulgated in accordance with statutory authority, has the force and effect of law. Thus, like a statute, an administrative rule is presumed to have a prospective effect unless a retrospective intent is clearly indicated. See Bellefontaine City School Dist. Bd. of Edn. v.Benjamin Logan Local School Dist. Bd. of Edn. (June 16, 1992), Franklin App. No. 91AP-1277, citing Greene v. United States
(1964), 376 U.S. 149, 84 S.Ct. 615, 11 L.Ed.2d 576. See, also,Martin v. Ohio Dept. of Human Services (1998),130 Ohio App.3d 512,524, 720 N.E.2d 576, citing Batchelor v. Newness (1945),145 Ohio St. 115,60 N.E.2d 685.
iv. Nothing in the amended version of Ohio Adm. Code 3701-53-09
indicates that it is intended to operate retrospectively. Ohio Adm. Code 3701-53-09(C) specifically states: `Permits issued under paragraphs (A) and (B) of this rule shall expire one year from the date issued * * *.' Thus, the language of the rule clearly indicates that the one-year expiration period only applies to permits issued under the amended version of the rule. Had the Department intended the one-year expiration period to apply to permits issued under the prior version of the rule, they could have included specific language expressing such an intent. However, the language of the rule evidences no such intent. Absent evidence that the Department of Health intended Ohio Adm. Code 3701-53-09 to operate retrospectively, we conclude that the one-year expiration period in Ohio Adm. Code 3701-53-09(C) only applies to permits issued after September 30, 2002. See State v.Baker, Fairfield App. No. 03-CA-77, 2004-Ohio-1769, at ¶ 32 (Holding that `the new one year expiration period applies only to permits issued after September 30, 2002.')"
 {¶ 8} As in Brunson, appellant contends that the precise issue is not retroactivity, but simply that the Ohio Administrative Code now requires current permit holders to seek valid renewal permits. We, however, reject appellant's contention. We note that appellant's argument is, in fact, based on the retrospective application of the amended rule. See Brunson.
 {¶ 9} Additionally, appellant contends, as in Brunson, that Ohio Adm. Code 3701-53-09(D)(3) supports his argument that the one year expiration period is intended to apply to permits issued under the rule's previous version and the current permit holders must seek renewed permits. In Brunson, we rejected appellant's argument as follows:
i. "Contrary to Brunson's argument, Ohio Adm. Code 5701-53-09(D) does not require persons possessing valid permits on September 30, 2002, to immediately seek renewal of their permit. Ohio Adm. Code 5701-35-09(D) dictates what a permit holder must do to qualify for renewal of the permit when thetime for renewal arrives. Ohio Adm. Code 3701-53-09 governs four types of permits: laboratory director permits, laboratory technician permits, senior operator permits, and operator permits. Under Ohio Adm. Code 5701-53-09(D), the renewal requirements for laboratory directors and laboratory technicians differ from the renewal requirements for senior operators and operators. The language Brunson focuses on, i.e., if the individual seeking a renewal permit currently holds an operator or senior operator permit, merely serves to distinguish the renewal requirements a senior operator or operator must satisfy from those a laboratory director or laboratory technician must satisfy. Thus, we fail to see how Ohio Adm. Code 3701-53-09(D)(3) supports Brunson's argument that the one-year expiration period applies to permits issued under the prior version of the statute."
 {¶ 10} Thus, we reject appellant's argument and agree with the trial court's conclusion that the officers did possess valid operator permits at the time they administered appellant's breath alcohol test and the breath testing instrument's calibration test.
 {¶ 11} Accordingly, based upon the foregoing reasons, we overrule appellant's first assignment of error.
 1. II. {¶ 12} In his second assignment of error, appellant asserts that the trial court erred by overruling his motion to suppress based upon the lack of probable cause to conduct the traffic stop. Appellant contends that his vehicle's travel over a one-way entrance ramp's white edge line did not constitute probable cause that a R.C. 4511.33[1] violation (driving in marked lanes) had occurred. Appellant further asserts that the proper standard under which this matter must be evaluated is the probable cause standard, not the reasonable suspicion standard associated with investigative stops. Appellant maintains that because the officer stopped appellant's vehicle based upon an alleged traffic violation, "the stop clearly was a non-investigative traffic offense stop." Regarding an alleged marked lanes violation, appellant notes that the entrance ramp did not consist of "two or more clearly marked lanes for traffic" and, thus, the marked lanes statute is inapplicable. See R.C. 4511.33.
 {¶ 13} Appellee contends that (1) appellant offers a "tortured definition of R.C. 4511.33"; (2) no case authority can be located to distinguish an entrance ramp "from the roadways it connects"; and (3) in any event, the trial court found that the officer acted in good faith or subjectively believed that appellant had committed a traffic violation.
 {¶ 14} After hearing evidence at the suppression hearing, the trial court overruled appellant's motion. The court found the officer's testimony credible and found that the entrance ramp "is an extension of State Route #7 and/or Main Street." Thus, the court reasoned, R.C. 4511.33 applied and the officer possessed a reasonable suspicion to stop appellant's vehicle. Further, the trial court stated that the officer acted in good faith and should not be faulted "for doing something which may or may not ultimately be a mistake."
 {¶ 15} Initially, we note that appellate review of a trial court's decision regarding a motion to suppress evidence involves mixed questions of law and fact. See State v. Long (1998),127 Ohio App.3d 328, 332, 713 N.E.2d 1, 3. When ruling on a motion to suppress evidence, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate the credibility of witnesses. See State v. Fanning
(1982), 1 Ohio St.3d 19, 20, 437 N.E.2d 583, 584; State v.Dunlap (1995), 73 Ohio St.3d 308, 314, 652 N.E.2d 988, 995. Accordingly, a reviewing court must defer to a trial court's findings of fact if competent, credible evidence exists to support the trial court's findings. See Long, supra; State v.Medcalf (1996), 111 Ohio App.3d 142, 675 N.E.2d 1268; Dunlap,
supra. The reviewing court then must independently determine, without deference to the trial court, whether the trial court properly applied the substantive law to the facts of the case. See Long; State v. Williams (1993), 86 Ohio App.3d 37,619 N.E.2d 1141; State v. Venham (1994), 96 Ohio App.3d 649,645 N.E.2d 831; State v. Fields (Nov.29, 1999), Hocking App. No. 99 CA 11, unreported. See, generally, Ornelas v. United States
(1996), 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911.
 {¶ 16} The Fourth and Fourteenth Amendments to the United States Constitution, as well as Section 14, Article I of the Ohio Constitution, protect individuals against unreasonable governmental searches and seizures. Delaware v. Prouse (1979),440 U.S. 648, 662, 99 S.Ct. 1391, 1400, 59 L.Ed.2d 660; State v.Gullett (1992), 78 Ohio App.3d 138, 143, 604 N.E.2d 176, 179. InKatz v. United States, the Supreme Court held that "searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under theFourth Amendment — subject only to a few specifically established and well-delineated exceptions." Id., (1967), 389 U.S. 347, 357,88 S.Ct. 507, 514, 19 L.Ed.2d 576; see, also, State v. Sneed
(1992), 63 Ohio St.3d 3, 6-7, 584 N.E.2d 1160, 1165; State v.Braxton (1995), 102 Ohio App.3d 28, 36, 656 N.E.2d 970, 975.
 {¶ 17} A traffic stop is reasonable when an officer possesses probable cause to believe that an individual has committed a traffic violation. See Whren v. United States (1996),517 U.S. 806, 809, 116 S.Ct. 1769, 135 L.Ed.2d 89 (stating that theFourth Amendment's reasonableness requirement is fulfilled and a law enforcement officer may constitutionally stop the driver of a vehicle when the officer possesses probable cause to believe that the driver of the vehicle has committed a traffic violation); see, also, Dayton v. Erickson (1996), 76 Ohio St.3d 3, 11-12,665 N.E.2d 1091.
 {¶ 18} In the absence of probable cause to believe that the driver of a vehicle has committed a traffic violation, a law enforcement officer may not stop the vehicle unless the officer observes facts giving rise to a reasonable suspicion of criminal activity, including a traffic violation. See, generally, Terryv. Ohio (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889;State v. Andrews (1991), 57 Ohio St.3d 86, 565 N.E.2d 1271;State v. Venham (1994), 96 Ohio App.3d 649, 654 N.E.2d 831. To justify a traffic stop based upon less than probable cause, an officer must be able to articulate specific facts which would warrant a person of reasonable caution in the belief that the person stopped has committed or is committing a crime, including a minor traffic violation. See Erickson, 76 Ohio St.3d 3,11-12, 665 N.E.2d 1091; Terry, supra.
 {¶ 19} A court that must determine whether a law enforcement officer possessed a reasonable suspicion or probable cause to stop a vehicle must examine the "totality of the circumstances." Moreover, the touchstone of a Fourth Amendment analysis is the reasonableness of the intrusion. See, e.g., Pennsylvania v.Mimms (1977), 434 U.S. 106, 108-109, 98 S.Ct. 330,54 L.Ed.2d 331.
 {¶ 20} Thus, if an officer observes a suspect commit a traffic violation, the officer then possesses both a reasonable suspicion of criminal activity and probable cause to stop the vehicle. A valid traffic stop does not, however, always require that an officer possess probable cause that a traffic violation or other criminal violation has occurred. The reasonable suspicion standard (Terry standard), wherein an officer has a reasonable, articulable suspicion that criminal activity is afoot, may provide an adequate constitutional justification for a traffic stop. For example, if an officer observes erratic driving, such as weaving within one's own lane of travel, but the conduct falls short of an actual traffic violation, the officer may still possess valid constitutional authority to conduct an investigative stop.
 {¶ 21} In the case sub judice, the prosecution argues and the trial court explicitly determined that the basis for the stop of the appellant's vehicle was the appellant's failure to drive within marked lanes of travel in violation of R.C. 4511.35. Appellant notes, however, that the portion of the roadway in question did not consist of "two or more clearly marked lanes." Thus, appellant argues, a violation of this particular statute could not have occurred.
 {¶ 22} After our review of the evidence, the statute's language and the related case law, we agree with the appellant that in the case at bar an alleged violation of R.C. 4511.33 did not provide an adequate justification for the traffic stop. The portion of the roadway on which appellant traveled at the time of the alleged violation did not consist of "two or more clearly marked lanes." Accordingly, appellant did not violate the terms of the statute and the officer did not possess probable cause that a violation had indeed occurred.
 {¶ 23} Other courts have touched upon this issue. In Statev. Miller (Sept. 22, 2000), Ashtabula App. No. 99-A-0052, the court held that the defendant's weaving on a gravel road that was not divided into two or more clearly marked lanes could not have resulted in a R.C. 4511.33 violation and justification for a traffic stop. In State v. Resas (Aug. 7, 1998), Ashland App. No. 96COA01192, the court held that a R.C. 4511.33 violation did not occur when a vehicle drifted onto an exit ramp and then came back into the roadway. See, also, State v. Young (Feb. 9, 2004), Seneca App. No. 13-03-52.
 {¶ 24} Consequently, after our review of this matter, we disagree with the trial court's view that the appellant violated R.C. 4511.33 and that Trooper Smith possessed probable cause that a traffic violation occurred that justified the stop of appellant's vehicle. Additionally, we emphasize that we do not consider, in light of the trial court's determination and appellee's argument, whether Trooper Smith may have possessed a reasonable, articulable suspicion of criminal activity that may have satisfied the standard for an investigative stop. See, e.g.,Terry. Rather, in this case the limited issue is whether the alleged marked lanes violation provided an adequate basis for the traffic stop.
 {¶ 25} Finally, we address the appellee's contention that the officer acted in "good faith" when he subjectively believed that the appellant had indeed committed a traffic violation and used this information as the basis for the stop. We agree with the appellee and the trial court that the evidence adduced at the suppression hearing supports the argument that Trooper Smith acted in good faith in making this traffic stop. We perceive no intent to ignore the traffic code or to improperly exceed the officer's authority in order to justify the stop. Nevertheless, a probable cause determination must be viewed under an objective standard, not a subjective standard. In 2 LaFave, Search and Seizure (1996) 33-34, Section 3.2(b) the treatise speaks to this issue as follows:
i. "(b) Subjective or objective test. It is clear that probable cause may not be established simply by showing that the officer who made the challenged arrest or search subjectively believed that he had grounds for his action. As the Supreme Court emphasized in Beck v. Ohio:
ii. We may assume that the officers acted in good faith in arresting the petitioner. But "good faith on the part of the arresting officers is not enough." * * * If subjective good faith alone were the test, the protections of the Fourth Amendment would evaporate, and the people would be "secure in their persons, houses, papers, and effects, only in the discretion of the police.
iii. The probable cause test, then, is an objective one. This is further reflected in the fact that the Supreme Court has repeatedly said that in order for there to be probable cause the facts must be such as would warrant a belief by "a prudent man," "a man of reasonable caution," or "a reasonably discrete and prudent man." "The scheme of the Fourth Amendment," said the court in Terry v. Ohio,
iv. becomes meaningful only when it is assured that at some point the conduct of those charged with enforcing the laws can be subjected to the more detached, neutral scrutiny of a judge who must evaluate the reasonableness of a particular search or seizure in light of the particular circumstances. And in making that assessment it is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of the seizure or the search "warrant a man of reasonable caution in the belief" that the actin taken was appropriate?"
 {¶ 26} This is not to suggest that probable cause must "be based on something an officer `can come into court and produce' or `objectively demonstrate to exist * * * at a later date.' * * * To be sure, tangible, or * * * `objective,' proof may be accorded greater weight than observations, impressions, and the like, but such proof is not a threshold requirement for probable cause."
 {¶ 27} (Citations omitted).
 {¶ 28} Conversely, but in a similar vein, once the objective test for probable cause has been satisfied, it makes no difference that the arresting officer may have held a subjective belief that the known facts and information did not constitute probable cause. In other words, a court may determine that an officer possessed probable cause even if the officer did not believe that the probable cause standard had been satisfied. In 2 LaFave, Search and Seizure (1996) 34-36, Section 3.2(b), the treatise states:
i. Assuming this objective test is satisfied, is it in addition necessary that there be a subjective belief by the officer conducting the arrest or search in question? As might be expected, this issue is seldom confronted; typically the officer claims he did believe or else it is simply assumed that he did, and the court's attention is focused upon the question of whether his belief was reasonable under the objective probable cause standard.
But it can happen that an officer will proceed to make an arrest or search without a subjective believe that he has a basis for doing so and that this fact will come out in the hearing on the motion to suppress. The issue must then be confronted.
ii. On occasion at least the Supreme Court has stated the rule as being "that a police officer may arrest without warrant one believed by the officer upon reasonable cause to have been guilty of a felony," which seems to call for a subjective belief. Similar dictum on this particular point is also to be found in some lower court decisions, such as that "[a]ctual facts creating an actual belief can alone give rise to probable cause." But this is not the correct view.
iii. One situation is that in which the officer makes a declaration at the hearing on the motion to suppress or on some other occasion to the effect that he did not believe the facts which he had at hand at the time of the arrest or search were sufficient. This kind of declaration does not require a finding of no probable cause. As explained in United States ex rel. Senkv. Brierly,
iv. the mere subjective conclusions of a police officer concerning the existence of probable cause is not binding on this court which must independently scrutinize the objective facts to determine the existence of probable cause. * * * Moreover, since the courts have never hesitated to overrule an officer's determination of probable cause when none exists, consistency suggests that a court may also find probable cause in spite of an officer's judgment that none exists. As phrased in United Statesv. Day, 455 F.2d. 454, 456 (3d Cir. 1972):
1. Here, the policeman testified that he did not have probable cause to search, and at best was merely suspicious. Of course, we would not consider ourselves bound by a police officer's inability to articulate his conclusions if the facts clearly demonstrated the existence of probable cause . . .
 {¶ 29} And, thus the Supreme Court in Florida v. Royer,
where an officer testified at the suppression hearing that there was not probable cause, concluded that "the fact that the officers did not believe there was probable cause and proceeded on a consensual or Terry-stop rationale would not foreclose the State from justifying Royer's custody by proving probable cause."
 {¶ 30} (Citations omitted).
 {¶ 31} Thus, in making probable cause determinations, an officer's subjective beliefs hold little sway. Rather, courts must evaluate the facts to determine if a reasonably prudent person would believe that the person to be arrested has committed a crime. See, generally, State v. Timson (1974),38 Ohio St.2d 122, 311 N.E.2d 16; Brinegar v. United States (1949),338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879.
 {¶ 32} Accordingly, based upon the foregoing reasons we hereby sustain appellant's second assignment of error, reverse the trial court's judgment and discharge the appellant.
Judgment Reversed and Appellant Discharged.
 JUDGMENT ENTRY
It is ordered that the judgment be reversed and that appellant recover of appellee costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Marietta Municipal Court to carry this judgment into execution.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Kline, P.J. Harsha, J.: Concur in Judgment Opinion.
[1] R.C. 4511.33, entitled Rules for driving in marked lanes, rovides in part:
(A) Whenever any roadway has been divided into two or more clearly marked lanes for traffic * * *.
(1) A vehicle * * * shall be driven, as nearly as practicable, entirely within a single lane * * *.