DECISION AND JUDGMENT ENTRY
{¶ 1} The Circleville Municipal Court found Troy A. Brungs guilty of operating a motor vehicle while under the influence of alcohol ("OMVI"). Brungs appeals the trial court's decision to deny his motion to suppress. Brungs contends that without admissible field sobriety tests, the officer did not possess probable cause to arrest him. Because we find that admissible field sobriety tests are not required for a finding of probable cause, and because the officer observed other indicators of intoxication, we disagree. Accordingly, we affirm the trial court's judgment.
 I. {¶ 2} Sergeant Aaron Quinn, of the Ohio State Highway Patrol, cited Brungs with OMVI in violation of R.C. 4511.19(A)(1)(a) and (d), and driving left of center in violation of R.C. 4511.25(B). Brungs pled not guilty and filed motions to suppress.
 {¶ 3} Brungs' motions to suppress also included requests for dismissal and findings of law. Specifically, the motions requested the suppression, dismissal, or findings for the following: (1) dismissal of traffic citations and suppression of all evidence for lack of probable cause and an investigatory stop initiated without reasonable articulable suspicion; (2) suppression of the horizontal gaze nystagmus (hereinafter "HGN") field sobriety test for lack of probable cause; (3) suppression of the walk and turn field sobriety test for lack of probable cause; (4) suppression of the one-leg field sobriety test for lack of probable cause; (5) a finding that R.C. 4511.19(D)(4)(B) is unconstitutional; (6) suppression of any evidence at trial on the field sobriety tests; (7) suppression of all statements made after arrest, but before the Trooper issued Miranda warnings; (8) suppression of BAC results for lack of probable cause; (9) suppression of all evidence for lack of probable cause; (10) a finding that expert testimony is necessary to verify the blood alcohol content (hereinafter "BAC") test results; and (11) a request for an ALS appeal for lack of reasonable suspicion of intoxication.
 {¶ 4} At the hearing, Sgt. Quinn testified that he was on duty and in his police cruiser on the night of the arrest. While traveling westbound on St. Rt. 56 in Circleville, Ohio, he observed Brungs' vehicle traveling eastbound at a high rate of speed. At that time, Sgt. Quinn had not activated his radar, and Brungs' vehicle passed him before he could activate it. Sgt. Quinn began to follow the vehicle, and paced it for approximately two miles. During the pace, he visually observed the vehicle traveling at speeds between 65-70 m.p.h. in a 55 m.p.h. speed zone. At some point during the pace, Sgt. Quinn activated his in-car camera, but a heavy rainstorm diminished the camera's visibility.
 {¶ 5} As Sgt. Quinn paced the vehicle, he observed it drive left of center on two separate occasions. The first left of center violation occurred before Sgt. Quinn activated the camera. On the second violation, the camera was on, and Brungs crossed the centerline by more than the width of the vehicle tires. Sgt. Quinn testified that Brungs' left of center violations lasted approximately two seconds each time.
 {¶ 6} Sgt. Quinn initiated a traffic stop by activating his overhead lights, but not the sirens. Brungs did not respond to the activated lights, and Sgt. Quinn activated the sirens. Brungs pulled over and Sgt. Quinn approached the vehicle. The sergeant observed a female passenger in the vehicle, and when Brungs rolled down the driver side window, he smelled the odor of alcohol. He also observed that Brungs' eyes were bloodshot. Brungs admitted to drinking some alcohol that evening. Sgt. Quinn admitted that Brungs did not display slurred speech, or difficulty in retrieving his license and exiting the vehicle.
 {¶ 7} Sgt. Quinn requested that Brungs exit the vehicle and then performed three field sobriety tests. During the tests, Sgt. Quinn still smelled the odor of alcohol emanating from Brungs' person. The first test performed was the HGN. Sgt. Quinn observed that Brungs exhibited six out of six clues for intoxication. However, Brungs, a police officer, had recently suffered a head injury in a patrol car accident. Sgt. Quinn then requested that Brungs perform the "walk and turn" field sobriety test. Brungs exhibited two clues for intoxication during that test. Finally, Brungs performed the "one leg stand" field sobriety test. Brungs exhibited one clue for intoxication during that test. Sgt. Quinn then arrested Brungs. At the patrol post, Brungs submitted to a breathalyzer test, which resulted in a BAC reading of 0.12.
 {¶ 8} In its judgment entry, the trial court noted that Brungs did not dispute the facts of the case as submitted by the State. The trial court also stated that it relied "on the credible, unrebutted testimony of Sgt. Quinn" in rendering the decision. Regarding the field sobriety tests, the trial court declined to give credence to them because of the weather conditions, hasty administration, and Sgt. Quinn's failure to conform with standards promulgated by the National Highway Traffic Safety Administration (hereinafter "NHTSA"). Nonetheless, the trial court found that probable cause existed for Brungs' arrest.
 {¶ 9} The trial court found fourteen factors supporting the Trooper's decision to arrest: "1. The hour is reflective of individuals leaving liquor control licensed premises; 2. The down pour was torrential, but notwithstanding the rain, 3. The defendant was driving between 65 and 70 m.p.h.[,] 4. On a highway that is not easy to navigate even on dry clear days[;] 5. The defendant was out of marked lanes[;] 6. If the Defendant rounded the curve at the top of Earnhart Hill as suggested by the Trooper's pacing testimony, such conduct was reckless at best[;] 7. The defendant failed to respond to emergency lights for a significant period of time[;] 8. While it was raining at an incredible pace, still the officer detected a strong odor of alcohol penetrating from a partially opened truck window, relatively removed from the officer[;] 9. The Defendant had blood shot eyes[;] 10. The Defendant when asked if he'd been drinking, replied, he'd "had a few"[;] 11. The Trooper is an experienced law enforcement officer[;] 12. Based upon all that Sgt. Quinn had observed and based upon his experience, he concluded that Officer Brungs was under the influence of alcohol[;] 13. * * * Sgt. Quinn did not have a portable breath testing device which might have enabled him in making a definitive probable cause determination[;] 14. The defendant argues that if physical tests are "not failed" the defendant should be released, when in fact, this particular defendant has practiced the physical tests many times which may account for his performance and further, research demonstrates that persons practiced at the art of consuming alcohol can perform tests appropriately because of habituation. The Court is not implying that such applies to this defendant, but only to offset defense counsel's contention that there is only one explanation for physical performance test that don't reflect the common perception of someone who is substantially impaired and that is, that, the person is not under the influence." (Sic.)
 {¶ 10} Ultimately, the trial court granted Brungs' motion to suppress the HGN test, and, although not explicitly granting or denying the motions, refused to consider the "walk and turn" and "one leg stand" field sobriety tests in its probable cause determination. However, the trial court overruled Branches 1, 5, 7, 9-11 of Brungs' motions to suppress and dismiss, reserved ruling on Branch 6 for trial, and declined to address Branch 8 because Brungs withdrew it prior to the hearing.
 {¶ 11} Brungs entered a plea of no contest for violating R.C.4511.19(A)(1)(h). The trial court accepted his plea and sentenced him to sixty days in the Pickaway County Jail, with fifty-seven days suspended. Further, the trial court imposed a $350 fine; suspended Brungs' driver's license for one year with fifteen days suspended, but granted occupational driving privileges; placed Brungs on probation for one year; and ordered him to pay the costs of the action. The trial court then dismissed R.C.4511.19(A)(1) and merged the offense of driving left of center into Brungs' convicted offense.
 {¶ 12} Brungs appeals and raises the following assignment of error: "Was probable cause lacking to arrest Appellant for OVI?"
 II. {¶ 13} At the outset, we must deal with several threshold issues. First, Brungs' brief fails to clearly identify which aspect of the trial court's judgment he appeals. As we previously noted, Brungs' motions were not limited to motions to suppress, but also included motions requesting dismissal and findings of law. Because Brungs' argument focuses on whether probable cause existed for the arrest, we limit our review to the motions to suppress the field sobriety tests.
 {¶ 14} Second, the trial court expressly granted Brungs' motion to suppress the HGN test, but failed to expressly grant or deny the motions to suppress the "one leg stand" test and "walk and turn" test. Regarding the latter tests, the trial court stated in its judgment entry that it did not rely on these motions in determining whether probable cause existed, but never stated whether these results were admissible at trial. When a trial court fails to rule on a motion, we presume that the court overruled the motion. State v. Binegar, Highland App. No. 00CA21, 2001-Ohio-2545, citing State v. Rozell (June 20, 1996), Pickaway App. No. 95CA17. Therefore, the trial court actually denied Brungs' motions to suppress the "walk and turn" and "one leg stand" tests, making the results of these tests admissible at trial.
 {¶ 15} Brungs fails to argue in his brief that the trial court erred when it declined to consider the "walk and turn" and "one leg stand" tests in its analysis because of poor administration, but then denied the motions for suppression. A court of appeals need only consider errors assigned and briefed. App.R. 12(A); Toledo's Great Eastern Shoppers City, Inc. v.Adbe's Black Angus Steak House No. III (1986),24 Ohio St.3d 198, 202. Because Brungs failed to assign or raise this argument in his brief, we decline to address it.
 {¶ 16} Finally, Brungs' stated assignment of error focuses only on whether probable cause existed at the time of the arrest. However, Brungs spends considerable space in his brief addressing the reasonable articulable suspicion standard, and arguing that probable cause cannot exist without admissible field sobriety tests. In the interests of justice and ease of analysis, we will also determine whether the arresting officer had a reasonable and articulable suspicion for the investigatory stop.
 III. {¶ 17} Appellate review of a decision on a motion to suppress evidence presents mixed questions of law and fact. State v.McNamara (1997), 124 Ohio App.3d 706, citing United States v.Martinez (C.A.11, 1992), 949 F.2d 1117, 1119. At a suppression hearing, the trial court assumes the role of trier of fact, and as such, is in the best position to resolve questions of fact and evaluate witness credibility. State v. Carter (1995),72 Ohio St.3d 545, 552. We must accept a trial court's factual findings if they are supported by competent, credible evidence. State v.Guysinger (1993), 86 Ohio App.3d 592, 594. Finally, we review the trial court's application of law to those facts under the de novo standard of review. State v. Anderson (1995),100 Ohio App.3d 688, 691.
 {¶ 18} The Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution provide for "[t]he right of the people to be secure * * * against unreasonable searches and seizures * * *." Searches and seizures conducted without a prior finding of probable cause by a judge or magistrate are per se unreasonable under the Fourth Amendment, subject to only a few specifically and well-delineated exceptions. California v. Acevedo (1991), 500 U.S. 565; Statev. Tincher (1988), 47 Ohio App.3d 188. If the government obtains evidence through actions that violate an accused'sFourth Amendment rights, that evidence must be excluded at trial.
 A. {¶ 19} The investigative stop exception to theFourth Amendment warrant requirement allows a police officer to conduct a brief investigative stop if the officer possesses a reasonable suspicion, based upon specific and reasonable facts, which, taken together with rational inferences from those facts, warrants the belief that criminal behavior is imminent. Terry v. Ohio
(1968), 392 U.S. 1; United States v. Brignoni-Ponce (1978),422 U.S. 873; State v. Andrews (1991), 57 Ohio St.3d 86. To justify an investigative stop, the officer must be able to articulate specific facts that would warrant a person of reasonable caution in the belief that the person stopped is about to commit a crime.Terry at 20. The propriety of an investigative stop must be viewed in the light of the totality of the circumstances. Statev. Bobo (1988), 37 Ohio St.3d 177, 178.
 {¶ 20} A police officer may stop the driver of a vehicle after observing a de minimis violation of traffic laws. State v.Bowie, Washington App. No. 01CA34, 2002-Ohio-3553, at ¶ 8, 12, 16, citing Whren v. United States (1996), 517 U.S. 806;Erickson, supra, at syllabus. When the officer has probablecause to believe that a traffic violation has occurred, the detention of a motorist is reasonable and constitutional. Id; see also, State v. McDonald, Washington App. No. 04CA7,2004-Ohio-5395, ¶ 17-18. In the absence of probable cause that the driver committed a traffic violation, the officer may not stop the vehicle unless articulable facts and circumstances would lead a reasonable person to believe that the driver was about to commit a crime; including a traffic violation. McDonald, supra at ¶ 18, citing Terry, supra; Andrews, supra; State v.Venham (1994), 96 Ohio App.3d 649.
 {¶ 21} Here, we find that competent, credible evidence supports the trial court's findings of fact. The trial court relied on Sgt. Quinn's credible testimony, and found that Brungs operated his vehicle at speeds between ten and fifteen miles per hour in excess of the posted speed limit. Brungs' vehicle also crossed the centerline on two separate occasions; and on one of these occasions, the vehicle crossed by more than the width of the tires. These facts support a finding that Brungs committed at least three de minimis traffic violations; and Sgt. Quinn, based on the totality of the circumstances, possessed probable cause to stop the vehicle. See McDonald, supra at ¶ 19-20.
 {¶ 22} Once Sgt. Quinn effected the non-investigatory stop for the traffic violation, he approached Brungs' vehicle and smelled a strong odor of alcohol emanating from the vehicle. Sgt. Quinn testified that he noticed the odor despite the fact that Brungs remained in his vehicle and only partially opened the driver side window. In addition, Sgt. Quinn noticed that Brungs exhibited bloodshot eyes. At this point, the stop became an investigatory stop because Sgt. Quinn requested that Brungs exit the vehicle and submit to field sobriety exams. Unless the officer possessed a reasonable, and articulable suspicion that Brungs was about to commit a crime — namely driving while under the influence of alcohol — the stop was illegal and all evidence must be suppressed.
 {¶ 23} We find that the facts as articulated by Sgt. Quinn at the suppression hearing are sufficient for a finding that he possessed a reasonable and articulable suspicion that Brungs was driving under the influence of alcohol. The strong odor of alcohol, coupled with Brungs' bloodshot eyes, and erratic driving, provide a sufficient basis upon which a reasonable person could conclude that he was about to commit a crime. Accordingly, the officer possessed probable cause to stop Brungs' vehicle for traffic violations, and also possessed a reasonable, articulable suspicion on which to conduct a further investigatory stop.
 B. {¶ 24} Brungs also argues that the State failed to prove that probable cause existed for his arrest. Specifically, Brungs contends that without the field sobriety tests, the facts only prove a reasonable and articulable suspicion for an investigatory stop.
 {¶ 25} The standard for determining whether the police have probable cause to arrest an individual for DUI is whether, at the moment of arrest, the police had sufficient information, derived from a reasonably trustworthy source, of facts and circumstances sufficient to cause a prudent person to believe that the suspect was driving under the influence. State v. Homan,89 Ohio St.3d 421, 427, 2000-Ohio-212, citing Beck v. Ohio (1964),379 U.S. 89, 91; State v. Timson (1974), 38 Ohio St.2d 122, 127. To make this determination, the trial court should consider the totality of facts and circumstances surrounding the arrest. Homan,
citing State v. Miller (1997), 117 Ohio App.3d 750, 761; Statev. Brandenburg (1987), 41 Ohio App.3d 109.
 {¶ 26} First, we reject Brungs' argument that the State cannot prove probable cause for an arrest without admissible field sobriety tests. In Homan, the Supreme Court held that "[w]hile field sobriety tests must be administered in strict compliance with standardized procedures, probable cause to arrest does not necessarily have to be based, in whole or in part, upon a suspect's poor performance on one or more of these tests. The totality of the facts and circumstances can support a finding of probable cause to arrest even where no field sobriety tests were administered or where * * * the test results must be excluded for lack of strict compliance." Id. at 427.
 {¶ 27} The Homan Court found that the field sobriety tests at issue were inadmissible because the arresting officer failed to strictly comply with NHTSA standards and instructions. Id. Nevertheless, the Court found probable cause for the arrest because the defendant admitted to drinking, and the officer observed erratic driving, bloodshot and glassy eyes, and an odor of alcohol emanating from the defendant's breath. Id.
 {¶ 28} Following the Homan rule, we find that Brungs' arrest does not fail for lack of probable cause merely because the trial court declined to consider the field sobriety tests in its analysis. We now must decide whether the totality of the facts and circumstances, other than the field sobriety test results, support a finding of probable cause. For the reasons that follow, we conclude that the trial court properly found sufficient probable cause for the arrest.
 {¶ 29} As previously mentioned, the Homan Court found sufficient probable cause for an arrest where the defendant admitted to drinking, and exhibited red and glassy eyes, erratic driving, and an odor of alcohol emanating from his person. Id. at 427. Here, Brungs admitted to drinking,[1] committed at least three traffic violations, had an odor of alcohol emanating from his person, and exhibited bloodshot eyes. Regarding the odor of alcohol, Sgt. Quinn testified that he smelled the odor both before and after Brungs exited the vehicle, thus eliminating any possibility that the odor only emanated from Brungs' female passenger.
 {¶ 30} Brungs argues that without evidence that he had difficulty with his motor coordination and speech skills we cannot find probable cause for his arrest. However, the law does not provide a bright line rule for finding probable cause. Instead, we must rely on the totality of the facts and circumstances of the case. Homan, supra at 427. We conclude that the totality of the facts and circumstances as articulated by Sgt. Quinn at the suppression hearing constitute a sufficient basis on which to find that probable cause existed. Homan, at 427. Accordingly, we affirm the trial court's judgment.
 IV. {¶ 31} In conclusion, we find that when an officer observes a traffic violation he possesses probable cause to effect a stop. If, after making a probable cause stop for a traffic violation, the officer smells the odor of alcohol emanating from the driver and observes other indicators of intoxication, such as bloodshot eyes, he possesses a reasonable and articulable suspicion on which to conduct a further investigatory stop. Finally, the arresting officer can possess probable cause to arrest for OMVI even when the field sobriety tests are deemed inadmissible or not considered by the trial court, provided that the totality of the facts and circumstances would lead a reasonable person to believe that the driver operated the vehicle while under the influence of alcohol. Accordingly, we affirm the trial court's judgment.
Judgment affirmed.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that costs herein be taxed to the appellant.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Circleville Municipal Court to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as the date of this Entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, P.J. and McFarland, J.: Concur in Judgment Only.
[1] The record suggests that Brungs admitted to drinking after he exited the vehicle, and thus after Sgt. Quinn possessed a reasonable and articulable suspicion to continue the traffic stop as an investigatory stop for suspicion of drunk driving.