DECISION AND JUDGMENT ENTRY
{¶ 1} Defendant-appellant, Tomeka Lewis, appeals from her conviction by the Scioto County Court of Common Pleas for possession of crack cocaine, trafficking in crack cocaine, and conspiracy to traffic in crack cocaine. For the following reasons, we affirm in part and reverse in part.
 {¶ 2} Ohio State Highway Patrol Trooper Terri Mikesh stopped Lewis for executing a left turn from a one-way street into the far right lane of another one-way street, in violation of R.C. 4511.36(A)(3). Trooper Nick Lewis arrived to assist, and the troopers found crack cocaine in Lewis's possession. They arrested Lewis for possession of and trafficking in crack cocaine, and they cited her for the traffic violation.
 {¶ 3} The Scioto County Grand Jury indicted Lewis on one count of trafficking in cocaine, in violation of R.C. 2925.03(A)(2), one count of possession of crack cocaine, in *Page 2 
violation of R.C. 2925.11(A), and one count of conspiracy to traffic in crack cocaine, in violation of R.C. 2923.01 and R.C. 2925.03(A). Lewis pled not guilty to all counts. She then filed a motion to suppress the evidence seized during the traffic stop. Following a hearing at which Trooper Mikesh testified, the court denied the motion.
 {¶ 4} The case proceeded to trial, and a jury found Lewis guilty on all counts. The trial court sentenced Lewis to 10 years for the trafficking count, 10 years for the possession count, and five years for the conspiracy count. The court ordered Lewis to serve the trafficking and possession sentences consecutively. The court ordered Lewis to serve the conspiracy sentence concurrently. Overall, the court ordered Lewis to serve 20 years in prison.
 {¶ 5} Lewis timely appealed her conviction and assigns two errors for our review:
 The trial court erred in sentencing Ms. Lewis for trafficking in crack cocaine, in violation of R.C. 2925.03(A)(2), and possession of crack cocaine, in violation of R.C. 2925.11(A).
 The trial court erred when it overruled Ms. Lewis'[s] motion to suppress the initial traffic stop.
 {¶ 6} In her first assignment of error, Lewis contends that the trial court erred in sentencing her for both trafficking in crack cocaine, in violation of R.C. 2925.03(A)(2), and possession of crack cocaine, in violation of R.C. 2925.11(A), based on the Supreme Court of Ohio's decision in State v. Cabrales, 118 Ohio St.3d 54, 2008-Ohio-1625. Specifically, Lewis contends that under Cabrales, these are allied offenses of similar import. Therefore, she cannot be convicted of both offenses unless the court finds that the crimes were committed separately or that there was a separate animus for each crime. The State concedes that this matter should be remanded to the trial court for a determination consistent with Cabrales. *Page 3 
 {¶ 7} R.C. 2941.25, Ohio's multi-count statute, provides:
 (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
 (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.
 {¶ 8} The Supreme Court of Ohio established a two-step analysis for determining whether R.C. 2941.25 prohibits cumulative sentencing for two offenses. State v. Rance (1999), 85 Ohio St.3d 632. First, the court must determine whether the offenses are "allied offenses of similar import," meaning that they "correspond to such a degree that the commission of one crime will result in the commission of the other." Id. at 636, quoting State v. Jones (1997), 78 Ohio St.3d 12, 13. If they do not, "the offenses are of dissimilar import and the court's inquiry ends — the multiple convictions are permitted." Id. If they do, the court proceeds to the second step. The court must review the defendant's conduct to determine if the crimes were committed separately or with a separate animus for each crime. Id. If they were, the defendant may be punished for both. Id., citing Jones at 13-14.
 {¶ 9} In Cabrales, the Supreme Court of Ohio rejected a "`strict textual comparison' of the elements in considering whether trafficking in a controlled substance under R.C. 2925.03(A)(2) and possessing a controlled substance under R.C. 2925.11(A) are allied offenses of similar import." State v. Hansard, Scioto App. No. 07CA3177,2008-Ohio-3349, ¶ 45. Pursuant to the two-step analysis set forth inRance, the Court first compared the elements of the offenses: *Page 4 
 To be guilty of possession under R.C. 2925.11(A), the offender must "knowingly obtain, possess, or use a controlled substance." To be guilty of trafficking under R.C. 2925.03(A)(2), the offender must knowingly prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance, knowing, or having reason to know, that the substance is intended for sale. In order to ship a controlled substance, deliver it, distribute it, or prepare it for shipping, etc., the offender must "hav[e] control over" it. R.C. 2925.01(K) (defining "possession").
Cabrales at ¶ 30. The Court concluded that the offenses were allied offenses of similar import because the "commission of the first offensenecessarily results in commission of the second." Id. Proceeding to the second step, the Court determined that based on the facts of the case, Cabrales committed the offenses with the same animus, i.e. to sell the drugs, within the meaning of R.C. 2941.25(B). Id. at ¶ 31. Therefore, he could not be convicted of both offenses.
 {¶ 10} In this case, the jury convicted Lewis of possession of crack cocaine, in violation of R.C. 2925.11(A), and trafficking in crack cocaine, in violation of R.C. 2925.03(A)(2). Given the Supreme Court of Ohio's decision in Cabrales, these are allied offenses of similar import. Therefore, before sentencing Lewis for both offenses, the trial court should have determined if Lewis committed the offenses separately or with a separate animus. The trial court did not have the benefit of the Cabrales decision when it sentenced Lewis, and the trial court did not make this determination.
 {¶ 11} Lewis asks that we make this determination or remand this matter to the trial court. The State concedes that this matter should be remanded. Because the trial court did not consider whether the offenses were committed separately or with a separate animus, we agree that this matter should be remanded to the trial court. Accordingly, we sustain Lewis's first assignment of error.
 {¶ 12} In her second assignment of error, Lewis contends that the trial court erred *Page 5 
by not granting her motion to suppress evidence obtained during the traffic stop.
 {¶ 13} Our review of a trial court's decision regarding a motion to suppress presents a mixed question of law and fact. State v.Burnside, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. "When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." Id., citing State v. Mills
(1992), 62 Ohio St.3d 357, 366. Therefore, we must accept the trial court's findings of fact so long as they are supported by competent, credible evidence. Id., citing State v. Fanning (1982), 1 Ohio St.3d 19. We then must independently determine whether the trial court reached the correct legal conclusion in analyzing the facts of the case. Id.
 {¶ 14} The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution guarantee the right of the people to be free from unreasonable searches and seizures. State v.Orr (2001), 91 Ohio St.3d 389, 391. An officer's temporary detention of an individual during a traffic stop constitutes a seizure of a person within the meaning of the Fourth Amendment, "even if only for a brief period and for a limited purpose." State v. Stokes, Franklin App. No. 07AP-960, 2008-Ohio-5222, ¶ 8. To be constitutionally valid, the detention must be reasonable under the circumstances. Id., citingWhren v. United States (1996), 517 U.S. 806, 809-810.
 {¶ 15} The Supreme Court of Ohio has observed that "[authorities seem to be split as to whether a traffic stop is reasonable when supported merely by reasonable suspicion, or whether the heightened standard of probable cause must underlie the stop." City of Bowling Green v.Godwin, 110 Ohio St.3d 58, 2006-Ohio-3563, ¶ 13, quoting Gaddis ex rel.Gaddis v. Redford Twp. (E.D.Mich. 2002), 188 F.Supp.2d 762, 767. *Page 6 
However, the Supreme Court of Ohio recently determined that "if an officer's decision to stop a motorist for a criminal violation, including a traffic violation, is prompted by a reasonable and articulable suspicion considering all the circumstances, then the stop is constitutionally valid." State v. Mays, 119 Ohio St.3d 406,2008-Ohio-4539, ¶ 8.
 {¶ 16} To meet the reasonable suspicion standard, law enforcement must demonstrate "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Terry v. Ohio (1968), 392 U.S. 1, 21. "The `reasonable and articulable suspicion' analysis is based on the collection of factors, not on the individual factors themselves." State v. Batchili,113 Ohio St.3d 403, 2007-Ohio-2204, ¶ 19. Thus, "a police officer who lacks probable cause but whose observations lead him reasonably to suspect that a particular person's behavior is criminal may detain the person briefly to investigate the circumstances that provoked the suspicion."Mays at ¶ 13, citing Berkemer v. McCarty (1984), 468 U.S. 420, 439.
 {¶ 17} "Probable cause is a stricter standard than reasonable and articulable suspicion." Id. at ¶ 23, citing State v. Evans (1993),67 Ohio St.3d 405, 411. While "[p]robable cause is certainly a complete justification for a traffic stop," it is not required. Id. Therefore, we must determine whether Trooper Mikesh had a reasonable and articulable suspicion to justify the stop at issue here.
 {¶ 18} Trooper Mikesh stopped Lewis for violating R.C. 4511.36(A)(3), which provides:
 (A) The driver of a vehicle intending to turn at an intersection shall be governed by the following rules: * * * (3) At any intersection where traffic is restricted to one direction on one or more of the roadways, the driver of a vehicle intending to turn left at any such intersection shall approach the intersection in the extreme left-hand lane lawfully available to traffic moving in the direction of travel of such vehicle, and after entering the intersection *Page 7 
the left turn shall be made so as to leave the intersection, as nearly as practicable, in the left-hand lane of the roadway being entered lawfully available to traffic moving in that lane.
 {¶ 19} At the suppression hearing, Trooper Mikesh testified that Lewis's vehicle was immediately ahead of hers as both traveled southbound on U.S. 23, at a location where traffic is restricted to one direction. Lewis executed a left-hand turn onto U.S. 52 eastbound, at a location where traffic is also restricted to one direction. Mikesh observed Lewis make "the turn from the far left lane of U.S. 23 southbound to the right side, the far side of U.S. 52 eastbound, which is a violation." Trooper Mikesh testified that she "immediately initiated a traffic stop based on the violation."
 {¶ 20} Lewis contends that her actions in this case — making a left turn from the far left lane of a one-way road to the far right lane of another one-way road — are not enough to constitute a violation of R.C. 4511.36(A)(3). Specifically, Lewis contends that the State failed to demonstrate that a turn into the far left lane of U.S. 52 was practicable under the circumstances. At the suppression hearing, Trooper Mikesh acknowledged that under some circumstances, it would be more practicable for a driver to turn into the far right lane instead of the far left lane. For instance, if safe to do so, a driver could turn into the far right lane "to make an immediate right turn in to, say a driveway or something just immediately after the intersection[.]" Lewis argues that Trooper Mikesh "admitted that he [sic] did not wait to see if, perhaps, Ms. Lewis planned on turning immediately. In fact, he [sic] immediately initiated the traffic stop."
 {¶ 21} Initially, we note that Trooper Mikesh made no such admission. Rather, Mikesh stated that she made the traffic stop immediately after the violation, not the turn. Mikesh did not testify regarding how long she observed Lewis after the turn before *Page 8 
initiating the stop. We now examine whether the State had to offer specific testimony that Lewis's turn was not made "as nearly as practicable" to the far left lane on U.S. 52 in order to establish that Trooper Mikesh had a reasonable and articulable suspicion to initiate the stop.
 {¶ 22} In State v. Mays, the Supreme Court of Ohio faced a similar argument regarding the constitutionality of a traffic stop pursuant to R.C. 4511.33(A)(1), where an officer witnessed a motorist drift over the lane markings. The defendant argued that the stop was unjustified, in part, because "there was no reason to suspect that . . . he had not stayed within his lane `as nearly as [was] practicable,' within the meaning of [the statute]." Mays at ¶ 17. In rejecting this argument, the Supreme Court of Ohio recognized that R.C. 4511.33(A)(1) provides for circumstances in which a driver can cross a lane line without violating the statute. Id. However, "the question of whether [the defendant] might have a possible defense to a charge of violating R.C. 4511.33 is irrelevant in [the court's] analysis of whether an officer has a reasonable and articulable suspicion to initiate a traffic stop." Id. "An officer is not required to determine whether someone who has been observed committing a crime might have a legal defense to the charge." Id.
 {¶ 23} Like the statute at issue in Mays, R.C. 4511.36(A)(3) provides for circumstances in which a motorist can deviate from the prescribed course of action without violating the statute. However, once Trooper Mikesh observed Lewis executing the left turn into the far right lane on U.S. 52, Mikesh had a reasonable and articulable suspicion that Lewis violated the statute. As in Mays, the question of whether Lewis might have a possible defense to the charge (i.e. her turn was made as "nearly as practicable" to the far left lane) is irrelevant in our analysis of whether Trooper Mikesh had *Page 9 
a reasonable and articulable suspicion to initiate the traffic stop.
 {¶ 24} Although the trial court did not make findings of fact, given its denial of Lewis's motion to suppress, the court appears to have accepted Trooper Mikesh's testimony that she observed Lewis execute a left turn from a one-way street into the far right lane of another one-way street. In denying Lewis's motion to suppress, the trial court did not indicate whether it was applying a standard of probable cause or reasonable suspicion. Based on the evidence before us, we conclude that Trooper Mikesh had, at the very least, a reasonable and articulable suspicion that Lewis violated R.C. 4511.36(A)(3). Therefore, we overrule Lewis's second assignment of error.
 {¶ 25} In conclusion, we overrule Lewis's second assignment of error, but we sustain her first assignment of error. Accordingly, we affirm in part and reverse in part the judgment of the Scioto County Court of Common Pleas, and, for the reasons noted above, we remand this matter to the trial court for further proceedings consistent with this opinion and applicable law.
 JUDGMENT AFFIRMED IN PART, REVERSED IN PART, AND THE CAUSE REMANDED. *Page 10 
 JUDGMENT ENTRY
It is ordered that the JUDGMENT IS AFFIRMED IN PART AND REVERSED IN PART and that the CAUSE IS REMANDED. Appellant and Appellee shall split the costs.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Scioto County Court of Common Pleas to carry this judgment into execution.
IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
 Kline, J. McFarland, J.: Concur in Judgment and Opinion. *Page 1