[Cite as *State v. Kilbarger*, 2012-Ohio-1521.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
HOCKING COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | Case No. 11CA23 |
| | : | |
| Plaintiff-Appellant, | : | |
| | : | DECISION AND |
| v. | : | JUDGMENT ENTRY |
| | : | |
| ANTHONY L. KILBARGER, | : | **RELEASED 03/19/12** |
| | : | |
| Defendant-Appellee. | : | |

_____

APPEARANCES:

Laina Fetherolf, Hocking County Prosecutor, and William L. Archer, Jr., Hocking County Assistant Prosecutor, Logan, Ohio, for appellant.

James R. Kingsley, Kingsley Law Office, Circleville, Ohio, for appellee.

_____

Harsha, J.

{¶1}   The State of Ohio appeals the trial court's decision to dismiss charges against Anthony Kilbarger for operating a vehicle under the influence of alcohol, a drug of abuse, or a combination of them ("OVI").  The trial court concluded that law enforcement lacked probable cause to "detain or arrest" Kilbarger and granted his "motion to dismiss for lack of probable cause to arrest[.]"  We agree the trial court erred but for different reasons than those advanced by the State.  Although Kilbarger partially framed his motion as one for dismissal, the proper remedy for a Fourth Amendment violation is the suppression of evidence, not dismissal of the charges.  Moreover, the trial court incorrectly found that the patrolman needed probable cause to detain Kilbarger.  In reality to initiate the traffic stop the patrolman only needed a reasonable, articulable suspicion that Kilbarger was engaged in or about to be engaged in criminal activity.  And because this erroneous finding evidently served as the foundation for the

court's conclusion that the patrolman lacked probable cause to arrest Kilbarger, that conclusion is likewise erroneous. Accordingly, we reverse the trial court's decision and remand so that the court can treat Kilbarger's motion as one to suppress evidence and utilize the appropriate legal standards for deciding such a motion.

## I. Facts

{¶2} Patrolman Ryan Culbertson of the Logan Police Department arrested Kilbarger for OVI and a grand jury subsequently indicted him on two counts of OVI. In response Kilbarger filed a "multi-branch" motion asking the court to: 1.) "dismiss/suppress/in limine the indictment and all evidence" because Culbertson stopped him without reasonable articulable suspicion; 2.) suppress all evidence because Culbertson "further detained" him without reasonable suspicion; 3.) exclude "for purposes of probable cause and/or at trial his Field Sobriety Test results"; 4.) suppress any statements made in violation of his *Miranda* rights; 5.) "suppress all evidence for the reason he was arrested without probable cause that he was then and there under the influence of alcohol"; 6.) "exclude for purposes of probable cause and/or at trial his refusal to submit to Intoxilizer 8000 breath test"; 7.) exclude at trial his blood test results.

{¶3} The trial court held a hearing on the motion, which it orally characterized as a motion to suppress hearing. Culbertson testified that while on patrol, he observed Kilbarger driving. He recognized Kilbarger because people had previously pointed him out to Culbertson. People had also told Culbertson that Kilbarger had a suspended license. Culbertson contacted dispatch, got confirmation that Kilbarger had a suspended license, and initiated a traffic stop. According to Culbertson, he received

this confirmation in the time it took Kilbarger to drive half a block.  Culbertson acknowledged that typically for a driving under suspension offense, he issues a citation, so he had no intent to arrest Kilbarger when he initiated the stop.

{¶4}    Kilbarger parked his vehicle, jumped out, and started to walk towards the cruiser before Culbertson stopped it.  Kilbarger "appeared to be off balance" while he walked.  Culbertson told Kilbarger to return to his vehicle.  Culbertson then approached Kilbarger's vehicle and asked for his driver's license, registration, and proof of insurance.  Kilbarger could only produce his registration and proof of insurance.  Culbertson smelled "the odor of an alcoholic beverage" coming from the vehicle.  He noticed that Kilbarger's eyes were glassy and bloodshot.  He asked Kilbarger if he had anything to drink that day, which Kilbarger denied.  Culbertson noticed Kilbarger's speech was "slurred but not real bad."

{¶5}    Culbertson asked Kilbarger to exit the vehicle for field sobriety tests.  When Kilbarger complied, he was "unstable" and "used the door for support."  Culbertson had Kilbarger perform three field sobriety tests: the horizontal gaze nystagmus (HGN) test, the walk and turn, and the one leg stand.  Culbertson observed six clues during the HGN test and observed additional clues during the other tests.  On cross-examination, Culbertson acknowledged certain procedures he did not follow during these tests.

{¶6}    Culbertson testified he arrested Kilbarger for OVI and took him to the police department where he refused to take a breath test.  Culbertson prepared an affidavit for an emergency search warrant application to get a blood draw and testified at a hearing on the application.  In the affidavit, Culbertson averred that Kilbarger's

speech was "slurred or unintelligible." But he admitted that at the hearing on the application, he testified that Kilbarger's speech was not slurred. In the affidavit, Culbertson also averred that he determined Kilbarger was the "vehicle operator at the time of operation" through "admissions of the offender" and "observations of the investigating officer." But Culbertson acknowledged that Kilbarger never admitted that he was driving the vehicle. Culbertson obtained a search warrant, and the results indicated Kilbarger had a blood alcohol content of 0.155.

**{¶7}** The trial court issued the following decision after the hearing:

This cause came on regularly for hearing on the defendant's motion to dismiss for lack of probable cause to arrest the defendant. The Court finds the motion well-taken and sustains the same.

## Findings of Fact

1) The defendant was observed by Logan Police Department Patrolman Ryan Culbertson * * * passing by in a Toyota 4-Runner.

2) The defendant was not driving erratically in any way.

3) Officer Culbertson claims to have fallen in behind the defendant and called his dispatcher to "run" the defendant's license plate. According to the officer, the dispatcher then obtained the registration and the defendant's social security number and ran this through LEADS which revealed the defendant's license was under suspension. The officer claims this was done in 4-5 seconds before he turned on his overhead lights to stop the defendant. Based upon the evidence and testimony, the Court finds this claim is not credible.

4) Next, the defendant pulled into an alley and exited his vehicle and walked toward the cruiser. Patrolman Culbertson then ordered him back into his vehicle, approached the defendant's vehicle and began to question him. Although the officer testified that the defendant had slurred speech and checked the box on the boilerplate search warrant affidavit indicating so, he testified earlier before municipal Judge Wallace that the defendant's speech was not slurred. Therefore this testimony is unreliable.

5) The officer administered a horizontal gaze nystagmus test, to which he testified there were 4 clues. He also told the defendant to perform a one-

leg stand test, but the officer stopped the test after 8 seconds and failed to advise the defendant to continue as the officer admitted is proper protocol.

6) In the affidavit for a search warrant (for the defendant's blood draw) the officer marked "admitted to consuming . . . alcohol in some amount prior to the vehicle operation" but testified before this court that he didn't admit driving.

7) The officer also gave other improper instructions when observing the field sobriety tests.

8) The Court is not unaware that the defendant has a horrible driving record and faces revocation and a large jail sentence in Fairfield County as a result of this arrest. The Court has also been made aware by the prosecutor, in the presence of defense counsel, that the public perception is that the defendant "gets out of lots of these." However, he is still entitled to the protection of the constitution, in spite of his behavior.

<u>Conclusion of Law</u>

Yet the court finds there was probable cause for the issuance of the search warrant because Judge Wallace had a right to rely on information presented to him in affidavit form and by direct testimony. Whether the officer "ran" the defendant's license, registration and LEADS before or after he saw him driving is irrelevant in regard to the traffic stop.

However, the officer testified that he has virtually never arrested or taken a person into custody who is merely under suspension. Therefore, lacking credible evidence of probable cause, the officer had no right to detain or arrest the defendant for DUI. The matter is dismissed.

II.  Assignment of Error

**{¶8}**   The State assigns one error for our review:

I.       THE TRIAL COURT ERRED IN GRANTING APPELLEE'S MOTION TO DISMISS FOR LACK OF PROBABLE CAUSE TO ARREST.

III.  Propriety of Dismissal

**{¶9}**   In its sole assignment of error, the State contends that the trial court erred when it granted Kilbarger's "motion to dismiss for lack of probable cause to arrest." Despite the trial court's characterization of the motion, both parties apply the standard of

review for a motion to suppress in their briefs.  The State claims that "[i]t appears from the trial court's Decision and Judgment Entry that the initial stop on Appellee was not invalidated by the court."  (Appellant's Br. 7).  Therefore, the State does not address the propriety of the initial traffic stop and proceeds to argue that there was both "reasonable, articulable suspicion" for Culbertson to arrest Kilbarger for OVI (which as we explain below is not the correct legal standard) and "probable cause" for the arrest. (Appellant's Br. 7, 10).

{¶10}  We agree that the trial court erred when it dismissed the case but for different reasons than those advanced by the State.  Although Kilbarger characterized his multi-branch motion in part as a motion to dismiss, "[a] motion to dismiss is generally used when a defendant requests a court to dismiss an entire action based upon some clearly defined transgression (e.g. defects in indictment or complaint, speedy trial violations, discovery violations)."  *State v. Hehr*, Washington App. No. 04CA10, 2005-Ohio-353, at ¶3, fn. 2.  Although Kilbarger cites Crim.R. 48 as supportive of dismissal in this case, see Appellee's Brief at 17, there is no provision in Ohio's Rules of Criminal Procedure for "a motion to dismiss a criminal case founded on the lack of probable cause."  *State v. Marcinko*, Washington App. No. 06CA51, 2007-Ohio-1166, at ¶11, quoting *State v. Hartley* (1988), 51 Ohio App.3d 47, 48, 554 N.E.2d 950; See *Hehr* at ¶3, fn. 2.  Moreover, there is no provision in the Rules of Criminal Procedure for summary judgment or a pretrial motion to challenge the legal sufficiency of the evidence.  *Hehr* at ¶3, fn. 2.  See also *State v. Brustowski* (Mar. 24, 1999), Summit App. No. 19221, 1999 WL 291906, at *1 ("A motion to dismiss that goes beyond the face of charges against a defendant can only be presented as a motion for acquittal pursuant to

Crim.R. 29(A) after the prosecution has presented its case.") And see generally, *State v. Nihiser*, Hocking App. No. 03CA21, 2004-Ohio-4067, which discusses Crim.R. 48 and the Supreme Court of Ohio's decision in *State v. Busch* (1996), 76 Ohio St.3d 613, 669 N.E.2d 1125.[1]

{¶11} The trial court granted Kilbarger's motion based on alleged Fourth Amendment violations. "The proper remedy for Fourth Amendment violations is suppression of the evidence, not dismissal of the charges." *Hehr* at ¶3, fn. 2. Thus a lack of justification to detain a defendant or the "lack of probable cause to arrest can only result in suppression of illegally obtained evidence, not in dismissal of charges." *State v. Flanagan*, Lawrence App. No. 03CA11, 2003-Ohio-6512, at ¶1. "The result of a finding of lack of probable cause is that all evidence derived from the unconstitutional arrest is unavailable to the State in its case-in-chief." Id. at ¶7, citing *State v. Daily* (Jan. 15, 1998), Athens App. No. 97CA25, 1998 WL 18139, in turn, citing *Mapp v. Ohio* (1961), 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081. The State may continue prosecution without the suppressed evidence if it chooses. *Flanagan* at ¶7. Therefore, the trial court should have treated Kilbarger's motion simply as one to suppress evidence. Even if the court granted the motion and ultimately suppressed all the evidence against Kilbarger, it would have been the State's decision whether to continue its prosecution, not the trial court's.

{¶12} Moreover, the trial court applied an improper analysis when it found that Culbertson lacked probable cause to arrest Kilbarger. The Fourth Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment,

---

[1] In the context of a preliminary hearing under Crim.R. 5(B) lack of probable cause to believe the Defendant committed a felony would be an appropriate basis for discharging the accused. However we deal here with a crime charged by the grand jury.

provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Section 14, Article I of the Ohio Constitution also prohibits unreasonable searches and seizures. Because Section 14, Article I and the Fourth Amendment contain virtually identical language, the Supreme Court of Ohio has interpreted the two provisions as affording the same protection. *State v. Orr*, 91 Ohio St.3d 389, 391, 2001-Ohio-50, 745 N.E.2d 1036.

{¶13} Searches and seizures conducted without a prior finding of probable cause by a judge or magistrate are per se unreasonable under the Fourth Amendment, subject to only a few specifically established and well-delineated exceptions. *Katz v. United States* (1967), 389 U .S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576. Once the defendant demonstrates that he was subjected to a warrantless search or seizure, the burden shifts to the State to establish that the warrantless search or seizure was constitutionally permissible. See *Maumee v. Weisner*, 87 Ohio St.3d 295, 297, 1999-Ohio-68, 720 N.E.2d 507. In this case, law enforcement did not obtain a warrant for any purpose prior to arresting Kilbarger.

{¶14} "An officer's temporary detention of an individual during a traffic stop constitutes a seizure of a person within the meaning of the Fourth Amendment * * *." *State v. Lewis*, Scioto App. No. 08CA3226, 2008-Ohio-6691, at ¶14. "To be constitutionally valid, the detention must be reasonable under the circumstances." Id. "A traffic stop is reasonable when an officer possesses probable cause to believe that

an individual has committed a traffic violation." *State v. Taylor*, Washington App. No. 07CA11, 2008-Ohio-482, at ¶15, citing *Whren v. United States* (1996), 517 U.S. 806, 809, 116 S.Ct. 1769, 135 L.Ed.2d 89. "'Probable cause' is defined as a reasonable ground of suspicion that is supported by facts and circumstances, which are sufficiently strong to warrant a prudent person in believing that an accused person had committed or was committing an offense." *State v. Jones*, Washington App. No. 03CA61, 2004-Ohio-7280, at ¶40, citing *State v. Ratcliff* (1994), 95 Ohio App.3d 199, 205, 642 N.E.2d 31.

{¶15} Although probable cause "is certainly a complete justification for a traffic stop," it is not required. *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, at ¶23. So long as "an officer's decision to stop a motorist for a criminal violation, including a traffic violation, is prompted by a reasonable and articulable suspicion considering all the circumstances, then the stop is constitutionally valid." Id. at ¶8. Reasonable and articulable suspicion is obviously a lower standard than probable cause. See id. at ¶23. To conduct an investigatory stop, the officer must be able to point to specific and articulable facts which, taken together with rational inferences derived from those facts, give rise to a reasonable suspicion that the individual is engaged or about to be engaged in criminal activity. See *State v. Williams* (1990), 51 Ohio St.3d 58, 60-61, 554 N.E.2d 108 (per curiam). "The propriety of an investigative stop by a police officer must be viewed in light of the totality of the surrounding circumstances." *State v. Freeman* (1980), 64 Ohio St.2d 291, 414 N.E.2d 1044, at paragraph one of the syllabus.

{¶16} Once a driver has been lawfully stopped, an officer may order the driver to

get out of the vehicle without any additional justification. *State v. Huffman*, Clark App. No. 2010-CA-104, 2011-Ohio-4668, at ¶8. See *Pennsylvania v. Mimms* (1977), 434 U.S. 106, 111, fn. 6, 98 S.Ct. 330, 54 L.Ed.2d 331. However, "the officer must 'carefully tailor' the scope of the stop 'to its underlying justification,' and the stop must 'last no longer than is necessary to effectuate the purpose of the stop.'" *Marcinko*, supra, at ¶26, quoting *Florida v. Royer* (1983), 460 U.S. 491, 500, 103 S.Ct. 1319, 75 L.Ed.2d 229. "An officer may lawfully expand the scope of the stop and may lawfully continue to detain the individual if the officer discovers further facts which give rise to a reasonable suspicion that additional criminal activity is afoot." Id.

{¶17} Thus, "[a]n officer conducting a routine traffic stop may * * * expand the stop's scope in order to investigate whether the individual stopped is under the influence of alcohol and may continue to detain the individual to confirm or dispel his suspicions if the officer observes additional facts during the routine stop which reasonably lead him to suspect that the individual may be under the influence." Id. at ¶28. This expanded stop might include field sobriety tests. The results of field sobriety tests are admissible at trial if the State presents clear and convincing evidence that the officer administered the tests in substantial compliance with "the testing standards for any reliable, credible, and generally accepted field sobriety tests that were in effect at the time the tests were administered * * *." R.C. 4511.19(D)(4)(b).

{¶18} The standard for determining whether an officer had probable cause to arrest an individual for OVI is whether, at the moment of arrest, the officer had sufficient information, derived from a reasonably trustworthy source of facts and circumstances, sufficient to cause a prudent person to believe that the suspect was operating a motor

vehicle while under the influence. See *State v. Homan*, 89 Ohio St.3d 421, 427, 2000-Ohio-212, 732 N.E.2d 952 (superseded by statute on other grounds), citing *Beck v. Ohio* (1964), 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 and *State v. Timson* (1974), 38 Ohio St.2d 122, 127, 311 N.E.2d 16. When making this determination, the trial court should consider the totality of facts and circumstances surrounding the arrest. Id.

{¶19} Contrary to the State's position that the trial court upheld the initial traffic stop, the trial court specifically found that Culbertson lacked probable cause to "*detain* or arrest" Kilbarger. (Emphasis added). Thus the trial court found both the initial traffic stop and the continued detention for field sobriety tests invalid for lack of probable cause. However, as we explained above, the State did not have to demonstrate probable cause existed for Culbertson to take those actions. The State only had to show Culbertson had a reasonable, articulable suspicion that Kilbarger was driving under suspension – a lower standard than probable cause – to initiate the traffic stop. If the traffic stop was proper, Culbertson did not need any additional justification to order Kilbarger out of the vehicle so long as the detention did not last longer than necessary to effectuate the purpose of the stop. Moreover, Culbertson could lawfully expand the scope of the stop and conduct field sobriety tests if he discovered additional facts that gave rise to a reasonable, articulable suspicion that Kilbarger had been operating the vehicle under the influence.

{¶20} Kilbarger contends that "[s]ince the trial judge did not believe the officer in any respect, then his basis for the stop was not believed, the stop was unconstitutional warranting suppression of the evidence." (Appellants' Br. 4). However, even if we accept the contention that the trial court did not believe Culbertson actually ran the

LEADs check, the court still applied the wrong legal standard to determine if the initial stop was reasonable.

{¶21} It appears the trial court concluded that Culbertson lacked probable cause to arrest Kilbarger because he lacked "probable cause" to initially detain him; because the initial detention was illegal, nothing Culbertson discovered after the initial stop could be used to form the basis for probable cause to arrest Kilbarger. Clearly this analysis is flawed because the court applied the wrong legal standard when it invalidated both the traffic stop and the continued detention for field sobriety tests. Therefore, the court's ultimate conclusion that Culbertson lacked probable cause to arrest Kilbarger was premised on an incorrect legal analysis of the original investigative stop and subsequent continued detention to investigate a possible OVI.

{¶22} We recognize that the court made other "conclusions of law" in its decision, but none of those conclusions justify a decision to dismiss the indictment. For instance, the court noted that Culbertson testified that he has "virtually never arrested or taken a person into custody who is merely under suspension." However, a traffic stop and subsequent arrest is not invalid simply because the officer did not intend to arrest the driver when he initiated the stop. As we have pointed out, subsequent events may justify a formal arrest. In addition, the court found "probable cause for the issuance of the search warrant" for the blood draw "because Judge Wallace had a right to rely on information presented to him in affidavit form and by direct testimony." However, the propriety of the search warrant is irrelevant for determining whether Culbertson legally detained and arrested Kilbarger because Culbertson obtained the warrant after the arrest.

{¶23} Accordingly, we find that the trial court erred when it dismissed the charges against Kilbarger. We sustain the sole assignment of error, reverse the trial court's decision, and remand this matter for further proceedings, including a new hearing on Kilbarger's motion.

JUDGMENT REVERSED AND
CAUSE REMANDED.

## JUDGMENT ENTRY

It is ordered that the JUDGMENT IS REVERSED and that the CAUSE IS REMANDED. Appellee shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Hocking County Court of Common Pleas to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.

Abele, P.J. & McFarland, J.: Concur in Judgment and Opinion.


For the Court


BY: _____
        William H. Harsha, Judge


### NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**