[Cite as *State v. King*, 2018-Ohio-4929.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ATHENS COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellant, | : | Case No. 18CA5 |
| v. | : | |
| | | <u>DECISION AND</u> |
| REBECCA KING, | : | <u>JUDGMENT ENTRY</u> |
| Defendant-Appellee. | : | RELEASED 11/29/2018 |

## APPEARANCES:

Lisa A. Eliason, Athens City Law Director, and Jessica L. Branner, Athens City Prosecutor, Athens, Ohio, for appellant.

Timothy Young, Ohio State Public Defender, and Christina Madriguera, Assistant Ohio State Public Defender, Columbus, Ohio, for appellee.

PER CURIAM.

{¶1}    The State appeals the trial court's decision and journal entry that suppressed the test results from a urine specimen on the ground that probable cause did not support the arrest of the accused, Rebecca King ("King"), for operating a vehicle under the influence ("OVI"). On appeal, the State contends that probable cause to arrest King for OVI did exist under the facts and circumstances of the case – and thus the urine sample collected following her arrest should not be suppressed.

{¶2}    The law requires that the totality of the facts and circumstances support a prudent officer's probable cause determination to arrest a suspect for OVI. After reviewing the arresting trooper's testimony, and other evidence presented at the suppression hearing, we conclude that there was sufficient evidence to establish probable cause to arrest King for OVI. Therefore, we sustain the State's sole assignment of error, and reverse the trial court's decision.

**I. Facts and Procedural History**

{¶3}   On November 24, 2017, at approximately 9:00 p.m., Trooper Brice Nihiser of the Ohio State Highway Patrol ("OSHP") stopped King for speeding on Stimson Avenue in Athens, Ohio. Following a subsequent investigation, Trooper Nihiser, suspecting that King was impaired on marijuana, arrested King for speeding and OVI in violation of R.C. 4511.19(A)(1)(a). A subsequent urinalysis led to an additional charge of OVI in violation of R.C. 4511.19(A)(1)(j)(viii)(II).

{¶4}   King filed a motion to suppress any and all evidence obtained as a result of the traffic stop and her subsequent arrest, including the urine test results. She argued, in part, that Trooper Nihiser did not have probable cause to arrest her for OVI.

{¶5}   At the suppression hearing the State presented the testimony of Trooper Nihiser, the OSHP criminalist who conducted the urinalysis, and a video recording of the encounter. Trooper Nihiser testified that he stopped King for traveling 37 m.p.h. in a 25 m.p.h. zone. When he first approached the vehicle, "the first thing that caught [his] attention that isn't typical is * * * [King] only rolled the window down partially." He also observed that King "had reddened conjunctiva", that marijuana debris could be seen on the floorboards, and that an odor of raw marijuana was emanating from the vehicle. According to Trooper Nihiser, at that point King admitted that "there * * * had been marijuana in the vehicle."

{¶6}   Trooper Nihiser then ordered King to exit the vehicle, and asked King if she had consumed any marijuana that day. King admitted to smoking marijuana about three hours earlier. He then asked King to open her mouth, and he noticed that she had "raised taste buds" and a "green streak" on her tongue. Trooper Nihiser then conducted a search of her vehicle, which did

not turn up any contraband other than the marijuana "debris" on the floorboards. Trooper Nihiser then decided to administer field sobriety tests.

{¶7} Trooper Nihiser explained his qualifications to administer field sobriety tests and to detect marijuana-impairment. He stated that he has been employed with the OSHP for three years. During his academy training, he took a one-week course in detecting alcohol use in drivers and received classroom instruction on drugged driving. After he completed training at the academy, he underwent Advanced Roadside Impaired Driving Enforcement (ARIDE) training, which is a training program that addresses drugged driving.

{¶8} Trooper Nihiser also explained that shortly before his encounter with King, he became a Drug Recognition Expert ("DRE")[1]. He explained that DRE certification requires the applicant to undergo a two-week instructional program, to complete a week of field trials, and to take "[m]ultiple tests." He stated that an "entire day" of instructional training was devoted to marijuana detection. Through this instruction, he learned that "reddening of the conjunctiva," i.e., reddening of the white part of the eye, is an "outward sign[] that somebody may be under the influence of [marijuana]." He explained further that "reddening of the conjunctiva" is "distinctly different" from the bloodshot eyes that would be observed in an individual who had consumed alcohol. He stated that other "outward signs that somebody may be under the influence of [marijuana]" include (1) "raised taste buds," (2) " a green stripe down their tongue," which "looks like a dull green film on their tongue" and results from "marijuana debris and film in their

---

[1] We observe that the International Association of Chiefs of Police website states:

> A drug recognition expert (DRE), sometimes referred to as a drug recognition evaluator, is an individual who has successfully completed all phases of the Drug Evaluation and Classification Program's (DECP) training requirements for certification as established by the International Association of Chiefs of Police (IACP) and the National Highway Traffic Safety Administration (NHTSA). A DRE is skilled in detecting and identifying persons under the influence of drugs and in identifying the category or categories of drugs causing impairment.

Available at http://www.decp.org/drug-recognition-experts-dre/what-they-do/.

mouth," (3) burn marks on their fingers, and (4) "debris." Trooper Nihiser explained that he also was trained to look for behavioral indicators that a person may be under the influence of marijuana, including "paranoia, lack of concentration, things like that." He additionally learned that clinical indications include dilated pupils and "a lack of convergence."

{¶9}     Trooper Nihiser indicated that he performed five field sobriety tests to help ascertain whether King was under the influence of marijuana: (1) the walk-and-turn test ("WAT"); (2) the one-leg stand test ("OLS"); (3) the horizontal gaze nystagmus test ("HGN"); (4) the "lack of convergence test"; and (5) a modified Romberg test. Trooper Nihiser testified that King displayed two clues on both the WAT and OLS tests: during the WAT test, she used her arms for balance and moved during the instruction phase; and during the OLS test, King used her arms for balance and swayed. She displayed no clues on the HGN test. With regards to the lack of convergence test, Trooper Nihiser testified that King displayed a lack of convergence. Trooper Nihiser did not testify about the result of the Romberg test, but did state that he observed eyelid tremors during the test.[2]

{¶10}   Trooper Nihiser also testified that throughout his interaction with King, he noted that her eyelids were droopy and pupils were dilated. He additionally believed that King appeared "very relaxed and just acted * * * like she was still under the effects of cannabis." Furthermore, Trooper Nihiser asked King whether she felt like she was still under the influence of marijuana and King stated "maybe a little." However, King also indicated that she was tired because she had not slept much the previous night.

{¶11}   Trooper Nihiser stated that based on "the SFSTs [standardized field sobriety tests], and the totality of how she was acting" he believed he had probable cause to arrest King

---

[2] A video recording of the modified Romberg test, played for the trial court and part of the record on appeal, indicates that King estimated the passage of 42 seconds, while only 30 seconds had actually passed.

for OVI. After effectuating the arrest, Trooper Nihiser transported King to the patrol post and administered a standardized DRE evaluation. After the evaluation, he "made the call that she was under * * * the influence of cannabis." He then obtained a urine sample. Laboratory testing revealed it to contain greater than two hundred nanograms per milliliter of marijuana metabolites.

{¶12}   On February 22, 2018, the trial court granted King's motion to suppress. The trial court determined that Trooper Nihiser did not have probable cause to arrest King for marijuana impaired OVI. The trial court explained: "It is not a violation of 4511.19 to operate a vehicle after drinking * * * and it is not a violation to operate a vehicle after smoking marijuana. There must be a further showing of either impairment or a limit violation to constitute a violation." The trial court did not believe that the field sobriety tests could be used to show that King likely would test above a prohibited level of marijuana metabolite due to the lack of scientific studies:

> In alcohol OVI cases, the NHTSA SFSTs have been accepted as establishing a reliable measure of a defendant's probability of testing above prohibited levels of alcohol. Court acceptance of these tests as an aid to establishing probable cause followed scientific testing in a controlled setting. No evidence was presented of comparable scientific testing regarding identification of a subject's probability of testing above the limits for marijuana or marijuana metabolites.

Accordingly, the trial court concluded that Trooper Nihiser did not have probable cause to arrest King for marijuana OVI and suppressed the results of King's urine test.

{¶13}   The State appealed as a matter of right. *See* R.C. 2945.67(A); Crim.R. 12(K).

## II. Assignment of Error

{¶14}  The State assigns the following error for our review:

THE TRIAL COURT ERRED WHEN IT GRANTED DEFENDANT'S
MOTION TO SUPPRESS FINDING THAT THERE WAS NO PROBABLE
CAUSE TO ARREST FOR OPERATING A VEHICLE UNDER THE
INFLUENCE OF DRUGS OR ALCOHOL.

### III. Law and Analysis

{¶15}  In its sole assignment of error, the State contends that Trooper Nihiser had probable cause to arrest King for marijuana impaired OVI, and thus, the trial court erred in granting the motion to suppress.

### A. Standard of Review

{¶16}  Our review of a trial court's decision on a motion to suppress presents a mixed question of law and fact. *State v. Jones,* 4th Dist. Washington No. 11CA13, 2012–Ohio–1523, ¶ 6, citing *State v. Roberts,* 110 Ohio St.3d 71, 2006–Ohio–3665, 850 N.E.2d 1168, ¶ 100 and *State v. Burnside,* 100 Ohio St.3d 152, 2003–Ohio–5372, 797 N.E.2d 71, ¶ 8. When considering a motion to suppress, the trial court acts as the trier of fact and is in the best position to resolve factual questions and evaluate witness credibility. *Id.* Accordingly, we defer to the trial court's findings of fact if they are supported by competent, credible evidence. *Id*. citing *State v. Landrum,* 137 Ohio App.3d 718, 722, 739 N.E.2d 1159 (4th Dist.2000). Accepting those facts as true, we must independently determine whether the trial court reached the correct legal conclusion in analyzing the facts of the case. *Id.* citing *Roberts* at ¶ 100 and *Burnside* at ¶ 8.

### B. Probable Cause to Arrest for OVI

{¶17}  "The standard for determining whether an officer had probable cause to arrest an individual for OVI is whether, at the moment of arrest, the officer had sufficient information,

derived from a reasonably trustworthy source of facts and circumstances, sufficient to cause a prudent person to believe that the suspect was operating a motor vehicle while under the influence." *State v. Kilbarger*, 4th Dist. Hocking No. 11CA23, 2012-Ohio-1521, ¶ 18. "When making this determination, the trial court should consider the totality of facts and circumstances surrounding the arrest. *Id.* " 'The result of a finding of lack of probable cause is that all evidence derived from the unconstitutional arrest is unavailable to the State in its case-in-chief.' " *Id.* at ¶ 11, quoting *State v. Flanagan*, 4th Dist. Lawrence No. 03CA11, 2003-Ohio-6512, ¶ 7.

### C. Indicia of Impairment

{¶18} In the case sub judice, it is undisputed that King consumed marijuana approximately three hours prior to the traffic stop. What is at issue, however, is whether Trooper Nihiser possessed probable cause to believe that King was impaired when he arrested her for marijuana impaired OVI under R.C. 4511.19(A)(1)(a). King alleges that she did not display any signs of impairment. We disagree. Trooper Nihiser detected several physiological and other signs that indicated marijuana had indeed impaired King's driving abilities or coordination; and King herself admitted that she was "maybe a little" under the influence of marijuana at the time of her arrest.

{¶19} Trooper Nihiser testified to the following regarding King's actions, appearance, and behavior: (1) King was travelling in excess of the stated speed; (2) King only partially rolled her window down, which is atypical; (3) King had reddened conjunctiva, as well as raised taste buds and a green film of her tongue – all signs that King had consumed marijuana; (4) King admitted to smoking marijuana approximately three hours earlier; (5) King seemed very relaxed and acted as if she was under the influence of marijuana; (6) King stated that she was "maybe a little" under the influence; (7) Trooper Nihiser observed droopy eyes, eyelid tremors, and dilated

eyes; and (8) Trooper Nihiser smelled the odor of raw marijuana emanating from King's vehicle and saw marijuana debris on the floorboard. These factors, considered together, gave Trooper Nihiser probable cause to arrest King for marijuana impaired OVI.

{¶20}   As noted above, the trial court discounted the results of the field sobriety tests. Even if we were to assume, without deciding, that the field sobriety tests should be discredited in this context, we still conclude that the totality of the remaining observations, and King's admission that she was "maybe a little" under the influence, support the existence of probable cause to arrest. *See State v. Brungs*, 4th Dist. Pickaway No. 05CA18, 2005-Ohio-5776, ¶ 26, citing *State v. Homan*, 89 Ohio St.3d 421, 427, 732 N.E.2d 952 (2000) (rejecting appellant's argument that the State cannot prove probable cause for an arrest without admissible field sobriety tests).

{¶21}   Even without considering the field sobriety test results, because of the totality of the remaining facts and circumstances, we find there was adequate probable cause to arrest King for marijuana impaired OVI. Accordingly, the State's sole assignment of error is sustained.

## IV. Conclusion

{¶22}   For the foregoing reasons, we conclude there was sufficient evidence to cause a prudent person to believe that King was operating a motor vehicle while under the influence. Therefore, the trial court erred when it determined that Trooper Nihiser lacked probable cause to arrest King for OVI. Accordingly, the State's sole assignment of error is sustained, the judgment of the trial court is reversed; and this matter is remanded for further proceedings.

JUDGMENT REVERSED AND CAUSE REMANDED.

Harsha, J., concurring:

{¶23} I believe the trial court properly discounted the propriety of using field tests as a reliable measure of a defendant's probability of testing above prohibited levels of marijuana. The court noted that unlike their use in alcohol-impairment cases, "[n]o evidence was presented of comparable scientific testing regarding identification of a subject's probability of testing above the limits for marijuana or marijuana or marijuana metabolites."

{¶24} In fact there is a lack of consensus within the scientific community on the reliability of the standardized field test to accurately predict the impairing effect of marijuana. *See generally Commonwealth v. Gerhardt*, 81 N.E.3d 751 (Mass. 2017). In comparing the reliability of standardized field test in alcohol-related cases to those involving marijuana, the court pronounced, "By contrast, in considering whether a driver is operating under the influence of marijuana, there is as yet no scientific agreement on whether, and, if so, to what extent, these types of tests are indicative of marijuana intoxication. The research on the efficacy of FSTs to measure marijuana impairment has produced highly disparate results." *Id. at 776*.

{¶25} Likewise, in Compton, R., *Marijuana – Impaired Driving – A Report to Congress* (DOT HS 812 440) (July 2017), the National Highway Traffic Safety Administration, (NHTSA) confirmed at p. 12, that "Current knowledge about the effects of marijuana on driving is insufficient to allow specification of a simple measure of driving impairment outside of controlled conditions." And at p. 13 NHTSA acknowledges, "Thus, there are currently no evidence-based methods to detect marijuana-impaired driving."

{¶26} Here the trooper himself testified that standardized field sobriety tests do not test for marijuana impairment.

{¶27} Therefore, I agree the trial court was entitled to discount or even reject the "results" of the standardized field tests in this case.

{¶28} Nonetheless, we must still decide whether the totality of the circumstances support a prudent officer's probable cause determination in light of the remaining evidence. For the reasons expressed in the principal opinion, I agree they do.

Hoover, P.J., dissenting:

{¶29}   I respectfully dissent from the lead opinion. I would overrule the State's sole assignment of error and affirm the trial court's judgment granting King's motion to suppress.

{¶30}   This Court has previously stated that "if an arrest is based upon R.C. 4511.19(A)(1), an officer must observe indicia of both * * * consumption and impaired driving or coordination before there will be probable cause for an arrest." *State v. Coates*, 4th Dist. Athens No. 01CA21, 2002 WL 851765, *6 (Feb. 25, 2002). After reviewing the record, it is clear that Trooper Nihiser did not observe King commit any traffic infractions other than speeding, and during the entire stop, King did not display signs of impaired coordination.

{¶31}   The facts of the present case closely mirror those of *State v. Kopp*, 2017-Ohio-4428, 93 N.E.3d 199 (5th Dist.); and I find the case informative.

{¶32}   In *Kopp*, an OSHP trooper stopped the defendant's vehicle due to an improperly illuminated rear license plate and the trooper's discovery that the vehicle was registered to an individual with an expired driver's license. *Id*. at ¶ 3. No other traffic violations were observed. *Id*. at ¶ 4. As the trooper spoke with the defendant, the trooper detected "the odor of fresh marijuana emanating from the vehicle," as well as "the odor of an alcoholic beverage." *Id*. at ¶ 5. The trooper asked the defendant if he had smoked marijuana, and the defendant admitted that he had done so "earlier". The trooper also noted that the defendant's eyes appeared "very glassy", "somewhat bloodshot", and his pupils were dilated. *Id*. at ¶¶ 5, 8. The trooper then administered several field sobriety tests. *Id*. at ¶¶ 7-10. He noted that the defendant's left eye exhibited two clues on the HGN test. *Id*. at ¶ 8. The trooper observed three clues on the WAT test: the defendant "moved his feet to keep balance, stopped at one point, and turned incorrectly." *Id*. On the OLS test, the trooper observed two clues: the defendant "swayed while balancing and put his

foot down." *Id*. The trooper also performed a lack of convergence test. The trooper indicated that the defendant "failed the test because his right eye did not converge and drifted out to the right twice." *Id*. at ¶ 10. The defendant correctly recited the alphabet and counted backwards from 69 to 57. *Id*. at ¶ 11. Upon completion of the field sobriety tests, the defendant was arrested for OVI in violation of R.C. 4511.19(A)(1). *Id*. at ¶¶ 12-13.

{¶33} The defendant entered a plea of not guilty and filed a motion to suppress based upon lack of reasonable suspicion to detain and probable cause to arrest. *Id*. at ¶ 13. The trial court granted the motion to suppress, finding that while the officer indicated that he observed some clues on the field sobriety tests, the court did not believe that the clues were sufficient to justify the arrest. *Id*. at ¶ 14.

{¶34} On appeal, the appellate court affirmed. The court pointed out that the trial court found that the defendant had a "virtually faultless performance on the field sobriety tests." *Id*. at ¶ 21. The appellate court further noted that it reviewed the video recording of the trooper's encounter with the defendant and agreed that it did not show any "impaired driving". *Id*. The court also observed that the defendant "spoke to the officer calmly, politely, and intelligently when audible; exited the truck without incident; submitted to the field sobriety tests without incident and generally exhibited no visible signs of impairment." *Id*. The court did not agree with the State's argument that "the odor of raw marijuana," the defendant's "admission to having smoked marijuana, and the clues that the trooper observed on the standardized field sobriety tests and the lack-of-convergence test" provided the trooper with probable cause to arrest the defendant for OVI. *Id*. at ¶ 22. Instead, the court concluded "[b]ased upon the totality of the facts and circumstances surrounding [the defendant]'s arrest, and most compellingly, the DVD of the stop," the trooper did not have probable cause to arrest the defendant for OVI. *Id*. at ¶ 25.

{¶35}   Here, like in *Kopp*, we have the benefit of Exhibit A, the DVD of the traffic stop, in the record before us. We also know that the trial court, in ruling on the motion to suppress, relied upon "all the facts and circumstances present, including driving, speech, overall balance and results of any field sobriety tests." A review of the DVD reveals that there was no evidence that King was driving erratically. The only evidence presented regarding King's operation of the vehicle was that she was speeding on the Stimson Avenue bridge, a location, in the words of the trial court, that is targeted by law enforcement and "is of almost no weight towards an impairment determination." In fact, a review of the DVD reveals that Trooper Nihiser followed King for a significant distance before engaging his cruiser lights; and no other traffic violations were observed. King promptly and safely pulled the vehicle over to the side of the road when the trooper's lights were engaged. King did not slur her speech, and appeared calm, polite, respectful, and articulate. King did not appear to be uneasy on her feet, and was able to exit the vehicle and move without difficulty. At the suppression hearing, Trooper Nihiser testified that King's driving was normal, other than the speed violation. Regarding King's speech, Trooper Nihiser testified that King understood and responded appropriately to the questions he asked her. Regarding her balance, Trooper Nihiser testified that King got out of the car normally and without assistance. In short, a review of the facts concerning King's driving, speech, and overall balance do not suggest that King was impaired.

{¶36}   While Trooper Nihiser's observations of reddened conjunctiva, "raised taste buds", and a "green streak" on King's tongue may be suggestive of marijuana consumption, it offers little with regard to the issue of impairment. Certainly, these factors coupled with the odor of raw marijuana and King's admission that she smoked marijuana three hours earlier justified

Trooper Nihiser's continued investigation, but they alone are not sufficient to establish impairment and probable cause to arrest for OVI.

{¶37}  Furthermore, even if we were to consider the results of the field sobriety tests, I would note that the appellate court in *Kopp*, considering similar test results and circumstances, found that the arresting officer lacked probable cause to arrest for marijuana impaired OVI. Furthermore, Trooper Nihiser offered confusing testimony at the suppression hearing, first saying that field sobriety tests cannot test for marijuana impairment, but then doubling back and saying they are useful for determining marijuana impairment:

Q: Do standardized field sobriety tests test for marijuana impairment?

A: No. There are no validated clues for marijuana in standardized field sobriety tests.

Q: So how could the field sobriety tests inform you on your decision to arrest her?

A: So just because they are not validated clues, essentially, that just means that there have been no studies where, you know, marijuana has been ingested by someone and then they've done a study like was done with the Florida study, San Diego study for alcohol. They can still be used as clues, they can still be used as a way of determining impairment in someone.

Q: So they can still be used as clues for impairment?

A: Correct.

{¶38}  The probable cause standard has " 'roots that are deep in our history,' " and " 'represent[s] the accumulated wisdom of precedent and experience as to the minimum

justification necessary to make the kind of intrusion involved in an arrest "reasonable" under the Fourth Amendment.' " *Bailey v. United States*, 568 U.S. 186, 192-193, 133 S.Ct. 1031, 185 L.Ed.2d 19 (2013), quoting *Henry v. United States*, 361 U.S. 98, 100, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959), and *Dunaway v. New York*, 442 U.S. 200, 208, 99 S.Ct. 2248, 60 L.Ed.2 824 (1979). While the term "probable cause" may elude "precise definition," it generally means "a reasonable ground for belief of guilt." (Internal quotation omitted.) *Maryland v. Pringle*, 540 U.S. 366, 371, 124 S.Ct. 795, 157 L.Ed.2d 769 (2003). Under the particular facts and circumstances of this case I would conclude that this standard has not been met. Accordingly, I would overrule the State's sole assignment of error and affirm the trial court's judgment. As such, I respectfully dissent.

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS REVERSED AND THIS CAUSE IS REMANDED for further proceedings consistent with this opinion. Appellee shall pay the costs.

The Court finds that reasonable grounds existed for this appeal.

It is ordered that a special mandate issue out of this Court directing the Athens County Municipal Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

McFarland, J.: Concurs in Judgment and Opinion.
Harsha, J.:      Concurs with Concurring Opinion.
Hoover, P.J.:  Dissents with Dissenting Opinion.

For the Court,

By: _____
       William H. Harsha, Judge

By: _____
       Matthew W. McFarland, Judge

By: _____
       Marie Hoover, Presiding Judge

### NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**